UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL PARKER and
RICHARD ZIMMERMAN,

    Plaintiffs,

v.                                Cause No.: 2:13-CV-01182-RB-GBW

LITHIA MOTORS, INC., d/b/a
LITHIA DODGE OF LAS
CRUCES, LITHIA MOTORS SUPPORT
SERVICES, INC., VINCENT ARMIJO, Individually,
RAY ALDERETTE, Individually, and RUBEN LOZA,
Individually.

    Defendants.

## PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM

COME NOW Plaintiffs, Michael Parker and Richard Zimmerman, by and through their counsel of record, Carrillo Law Firm, P.C. (Raúl A. Carrillo, Jr., Steven L. Lovett, and Yosef W. Abraham), and, pursuant to FED. R. CIV. P. 37, D.N.M. LR-CIV. P. 7.1 and 37.1, respectfully move the Court for an order compelling Corporate[1] Defendants to fully comply with this Court's *Order Granting In Part Plaintiffs' Motion to Compel* (Doc. 65) (entered Apr. 1, 2015) [hereinafter "Order"] and for all appropriate sanctions, as discussed below.

---

[1] "Corporate Defendants" are Lithia Motors, Inc. and Lithia Motors Support Services, Inc.

PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC. NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM - 1

## I. INTRODUCTION

1. On October 27, 2014, Plaintiffs presented Corporate Defendants with *Plaintiffs' First Set of Interrogatories, Request for Production, and Request for Admission to Defendants Lithia Motors, Inc., and Lithia Motors Support Services, Inc.* [hereinafter "First Set of Discovery"]. Corporate Defendants served responses to both, pursuant to an agreement between the parties, on December 22, 2014, and as is described in *Plaintiffs' Motion to Compel* (Doc. 52) [hereinafter "First Motion to Compel"].

2. On January 12, 2015, Plaintiffs filed their First Motion to Compel.

3. On April 1, 2015, the Court entered its Order on the First Motion to Compel.

4. On May 8, 2015, Plaintiffs' counsel sent defense counsel two (2) letters, copies of which are attached hereto as Exhibit 1 and Exhibit 2,[2] in which Plaintiffs explain that supplementation is required by the Court and, moreover, that certain supplementation was necessary in order for them to efficiently and effectively review "deal files."[3]

5. Later in the day on May 8, 2015, defense counsel and Plaintiff's counsel exchanged emails with regard to the letters attached hereto as Exhibits 1 and 2. The email exchange is attached hereto as Exhibit 3.[4] As part of that email exchange defense counsel told Plaintiff's counsel that he hoped defense counsel would have certain supplementation available upon commencement of deal file review on Sunday, May 10, 2015.

---

[2] The first letter sent on May 8, 2015, is labeled as Exhibit 1.

[3] The Court granted the First Motion to Compel "with respect to Request for Production 15," ordering the Corporate Defendants to "provide Plaintiffs' counsel with access to review the deal files from the requested time period at a time and location agreed upon between the parties." Doc. 65, p. 4.

[4] Mr. Carrillo embedded his responses in red type. That type has been highlighted in Exhibit 3.

PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC. NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM - 2

6. On Sunday, May 10, 2015, Plaintiff Zimmerman and his attorney, Yosef W. Abraham of the Carrillo Law Firm, P.C., without any of the aforementioned necessary supplementation, endeavored to review deal files at the Lithia Dodge of Las Cruces [hereinafter "LDLC"] store, beginning at approximately 1:00 p.m. and ending at approximately 5:45 p.m in light of Corporate Defendants' rejection of the 9:00 a.m. start time which Plaintiff's counsel proposed (*see* Exh. 3, p., 2, Email to Raúl A. Carrillo, Jr., from Christopher J. Tebo (May 8, 2015 11:39AM)), and in light of notice that afternoon that the LDLC store wished to close by 6:00 p.m.

7. On May 11 and 12, 2015, defense counsel deposed Plaintiffs Zimmerman and Parker, after having deprived them of the opportunity to fully prepare, *i.e.*, without the benefit of supplementation to their First Set of Discovery as ordered by the Court. *See generally* Order.

8. On May 12, 2015, Plaintiffs' counsel sent defense counsel a letter in which counsel explained, *inter alia*, that Corporate Defendants produced the deal files in a manner non-compliant with FED. R. CIV. P. 34(b)(2)(E)(i) and that Corporate Defendants' failure to have supplemented its responses to Plaintiffs' First Set of Discovery significantly frustrated the review. Letter to Christopher J. Tebo from Raúl A. Carrillo, Jr. (May 12, 2015), a copy of which is attached hereto as Exhibit 4.

9. At the conclusion of the deposition of Plaintiff Zimmerman on May 12, 2015, defense counsel represented to Plaintiffs' counsel, in a brief face-to-face conversation, that some (albeit undefined) supplementation would occur later in the week.

10. On May 14, 2015, Plaintiffs' counsel sent an email to defense counsel, to which he

attached the letters which are attached to the instant Motion as Exh. Nos. 1, 2, and 4, again requesting that Corporate Defendants comply with the Court's Order and, "in the meantime," that they provide counsel "with a written explanation of the status of the supplementation." Email to Christopher J. Tebo from Yosef W. Abraham (May 14, 2015 1:51 PM), a copy of which is attached hereto as Exhibit 5.

11. On Monday, May 18, 2015, Plaintiffs' counsel asked defense counsel to "block June 9 and 10 for depositions" of two of Corporate Defendants' corporate representatives, Laurie Rooper and Gary Richardson, with the understanding that "nothing is set in stone until the depositions are noticed" and that a review of deal files must occur before the June 9 deposition. Email to Christopher J. Tebo from Yosef W. Abraham (May 18, 2015 8:12 AM), a copy of which is attached hereto as Exhibit 6.

12. About ten minutes later, Plaintiffs' counsel, Yosef W. Abraham, sent an email to defense counsel containing a substantially similar draft of the instant Motion, asking for "twenty minutes to discuss." Email to Christopher J. Tebo from Yosef W. Abraham (May 18, 2015 8:28 AM), a copy of which is attached hereto as Exhibit 7.

13. Later in the day on May 18, 2015, Plaintiffs' counsel, Yosef W. Abraham spoke with defense counsel, Christopher J. Tebo, over the telephone, although Mr. Abraham understood that Mr. Tebo represented he had not yet read the draft motion in its entirety and was out of the office. During that telephone call, Mr. Tebo told Mr. Abraham that by May 19, 2015, Mr. Tebo would send an email regarding the draft motion and regarding whether the parties could agree to a stay of proceedings. *See* Email to Christopher J. Tebo from Yosef W. Abraham (May 18, 2015 1:48PM), a copy of which is attached hereto as

Exhibit 8.

14. On May 19, 2015, Corporate Defendants purported to supplement their responses to Plaintiffs' First and Third[5] sets of Requests for Production. *See* Email to Raúl A. Carrillo, Jr., and Yosef W. Abraham from Pamela Collins (May 19, 2015 3:32 PM) (conveying text responses to RFPSs without documents), a copy of which is attached hereto as Exhibit 9. *See also* Certificate of Service (filed May 19, 2015) (Doc. 91) (misleadingly representing that Mr. Tebo had "transmitted via U.S. Mail *and Email* . . . Supplemental Responses to Plaintiff's First Request for Production of Documents . . ." (emphasis added)). However, although the supplementation to RFP Nos. 12 and 15, state that responsive documents were "attached" therein (Exh. 9, pp. 2-5 (emphasis added)), the email conveying the text responses to Plaintiffs' RFPs state that responsive documents were **"to follow via U.S. Mail[.]"** *Id.*, p.1 (emphasis added).

15. On May 20, 2015, Plaintiffs' counsel sent defense counsel a letter, in which he expressed disagreement with defense counsel's characterization or suggestion in his supplement to Corporate Defendants' response to RFP No. 15 (Exh. 9, p. 4), that the parties had agreed to undertake deal file review "on either Sunday, June 7, 2015 or Monday[,] June 8, 2015." Letter to Christopher J. Tebo from Yosef W. Abraham (May 20, 2015), a copy of which is attached hereto as Exhibit 10. In that letter, Mr. Abraham described his understanding that he and defense counsel had "agreed that a review of the deal files is not to occur until after the Corporate Defendants have fully complied with all other

---

[5] The Third Set of RFPs is not subject to the Court's Order (Doc. 65). Therefore, that attachment to the email is not provided herein.

matters ordered by the Court (Doc. 65) including, but not limited to, supplementation of RFP No. 12." Exh. 10, p. 2. The letter also expressed Mr. Abraham's understanding, *inter alia*, that (a) "[f]ull compliance includes complete deal file review," that "the review . . . will take as much time as is reasonable," (b) the depositions of the Corporate Defendants' Rule 30(b)(6) representatives cannot occur before Corporate Defendants otherwise fully comply with the Court's Order, (c) "the parties have not agreed that deal file review will be undertaken on either Sunday, June 7, 2015, or Monday, June 8, 2015," and (d) "it is very likely that one full day will not be enough time to complete the deal file review." *Id.*, pp. 2-3.

16. On May 20, 2015, at 4:16 p.m., Corporate Defendants again purported to supplement discovery responses, *i.e.*, to supplement their responses to Plaintiffs' First Set of RFPs. *See* Email to Raúl A. Carrillo, Jr., and Yosef W. Abraham from Pamela Collins (May 20, 2015 4:16 PM) (conveying text responses to RFPs without documents), a copy of which is attached hereto as Exhibit 11. *See also* Certificate of Service (filed May 20, 2015) (Doc. 94) (misleadingly representing that Mr. Tebo had "transmitted via U.S. Mail *and Email* . . . Supplemental Responses to Plaintiff's First Request for Production of Documents . . ." (emphasis added)). However, although the supplementation to RFP Nos. 12, 25, and 26, state that responsive documents were "attached" therein (Exh. 11, pp. 3-6), the email conveying the text responses to Plaintiffs' RFPs state that responsive documents were **"to follow via U.S. Mail."** Exh. 11, p.1 (emphasis added).

17. On May 21, 2015, defense counsel sent an email to Plaintiff's counsel stating that: (a) the majority of issues raised in [Plaintiffs'] motion relative to document production appear

moot," (b) "[o]nly the deal file review issue appears ongoing," (c) "Plaintiffs have had, and still have, ample opportunity to review the deal files as necessary prior to the close of discovery," and (d) there do not appear to be good grounds . . . to warrant either a stay of proceedings or a continuance of the current trial setting." Email to Raúl A. Carrillo, Jr., and Yosef W. Abraham from Christopher J. Tebo (May 21, 2015 9:16 AM), a copy of which is attached hereto as Exhibit 12.

18. As of the filing of instant Motion, Plaintiffs' counsel have not received from defense counsel the parcel referenced on the first pages of Exhibit Nos. 9 and 11, *i.e.*, the documents purportedly produced in supplementation of multiple RFPs subject to this Court's Order.

19. The discovery deadline falls on June 25, 2015. *Stipulated Order Extending the Termination Date for Discovery and the Date for Filing Motions Related to Discovery* (Doc. 82) (filed Apr. 23, 2015). The depositions of Defendants Armijo, Alderette, and Loza have been noticed for June 1, 2, and 3, respectively. Doc. Nos. 79, 80, and 81.

20. Corporate Defendants' ongoing and unjustified failure to comply with the Court's Order has already frustrated Plaintiffs' ability to prove fraud by Defendant(s), pursue further written discovery (it is too late for Plaintiffs to submit more written discovery with the current discovery deadline), to prepare for their own depositions (an irreparable harm) and those of the Defendants, and to evaluate the settlement value of their claims.

## II.     MOTION TO COMPEL STANDARD

"If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . ., the court . . . may issue further just orders . . ." FED. R. CIV. P. 37(b)(2)(A), *amended on other grounds by* 2015 US ORDER 0017 (C.O. 0017). Rule 37 provides a non-exhaustive list of "just orders":

> (i) directing that the matters embraced in the order or other designated facts **be taken as established** for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) **staying further proceedings** until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a **default judgment against the disobedient party**; or
> (vii) treating as **contempt of court** the failure to obey any order except an order to submit to a physical or mental examination.

(emphasis added).[6] Moreover, a court can award the movant its "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). A trial court has broad discretion in awarding sanctions pursuant to Rule 37(b)(2). *See Klein-Becker USA, LLC, v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). Indeed, the [d]etermination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Edwards-Flynn v. Yara*, No. CIV 08-0186 JB/ACT, 2009 WL 1588687, *2

---

[6] "Default judgment . . . should be used only when a party's noncompliance is due to willfulness, bad faith, or any fault of the [disobedient party] and not when a party is unable to comply with a discovery order. . . . No wrongful intent need be shown" *Klein-Becker USA, LLC, v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (internal quotation marks and quotations omitted) (alteration in original).

(unpublished opinion) (Browning, J., Judge) (internal quotation marks and citation to Tenth Circuit Court of Appeals omitted) (alteration in original) (granting a stay of discovery, pursuant to Rule 37(b) as a sanction for refusing to participate in discovery).

The United States District Court for the District of Kansas has succinctly stated the law on sanctions under Rule 37:

> Sanctions under Rule 37 are intended to **ensure that a party does not benefit from its failure to comply**, and to deter those who might be tempted to such conduct in the absence of such a deterrent. The court should diligently apply sanctions under Rule 37 both to penalize those who have engaged in sanctionable misconduct and to deter those who might be tempted to such conduct in the absence of such a deterrent. The primary goal of sanctions is to deter misconduct. The sanction to be imposed should be the least severe of those available, which appears adequate to deter and punish the wrongdoer.

*Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 647 (D. Kan. 1999) (internal quotation marks, quotation, and citation to Tenth Circuit precedent with regard to the last sentence omitted) (emphasis added).

### III. ARGUMENT

#### A. Corporate Defendants Have Violated the Court's Order by Failing to Timely Comply With It.

Although the Court's Order does not provide a time by which supplementation pursuant to the Order must occur (*see generally* Doc. 65), the discovery deadline falls on June 15, 2015, and "the deadline for filing motions related to discovery" falls on June 25, 2015. Doc. 82. Where a court order does not provide a time by which the act or acts it orders must be performed, it should be understood that compliance must occur within a *reasonable* time. That understanding is justified based on well-established contract law which provides that where a contract does not provide for a time for performance that a reasonable time shall be presumed. *See, e.g.*, U.C.C.

PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC. NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM - 9

§ 2-309(1). A "reasonable time" in the context of compliance with an order on a motion to compel responses to requests for production should be understood to be no less than thirty (30) days from the date the order is entered because Rule 34 provides that a responding party "must respond . . . within 30 days . . ." FED. R. CIV. P. 34(b)(2)(A). Finally, this understanding is justified in the instant case because the discovery deadline falls on June 15, 2015, meaning that any discovery request must have been served by no later thirty days *before* that date, *i.e.*, by Monday, May 18, 2015.[7] *See Order Setting Pretrial Deadlines and Briefing Schedule* (entered Aug. 22, 2014) (Doc. 39) ("Service of interrogatories or requests for production shall be considered timely only if the responses are due prior to the deadline."). It is now too late, under the current discovery deadline, for Plaintiffs' to serve more written discovery.

### B. Corporate Defendants' Unjustified Non-Compliance With the Order Has Caused Substantial Prejudice to Plaintiffs.

Numerous reasons exist for finding that Corporate Defendants' unjustified noncompliance with the Court's Order has materially prejudiced Plaintiffs' ability to prosecute or settle their case. Plaintiffs have already presented the Court with their arguments (via their First Motion to Compel and their counsel's oral argument on the same) for why the discovery sought is justified and the prejudice which could occur if not allowed. Nevertheless, in the following paragraphs Plaintiffs provide a sample of specific instances of prejudice, some of which are new, and some of which may not be as clear or memorable from previous briefings and arguments, and all of which have had the effect of preventing Plaintiffs from adequately

---

[7] Thirty days before June 15, 2015, actually falls on Saturday, May 16, 2015. However, Rule 6 provides that "if the last day is a Saturday . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. CIV. P. 6(a)(1)(C).

preparing for: (a) trial, (b) their own depositions (already taken), and (c) meaningful settlement negotiations.[8] Plaintiffs ask that the Court note that all discovery matters at issue are pertinent, for instance, to: (1) Plaintiffs' ability to carry their burden of proving, with regard to their whistleblower claims, that Plaintiffs held a reasonable, good-faith belief that fraud was occurring at LDLC, (2) identifying deponents, (3) developing thorough lines of questioning for the depositions of Defendants, and (4) defeating the credibility of any number of named Defendants.

1. **Plaintiffs Have Been Prevented from Uncovering Fraud Because Corporate Defendants Have Frustrated Review of Deal Files.**

Perhaps most significantly, Corporate Defendants failed, in response to RFP No. 15, to produce "deal files" "as they are kept in the usual course of business," in violation of FED. R. CIV. P. 34(b)(2)(E)(i). *See* Exh. 4 (discussing the issue at length). As Plaintiffs' counsel informed the Court during the hearing on the First Motion to Compel, a meaningful review of deal files can only be had if Plaintiff Zimmerman is able to participate in the process. Plaintiff Zimmerman now lives and works in Mansfield, Texas, which is approximately 670 miles from the LDLC store. Having made the long trip to Las Cruces to review the deal files and to give deposition testimony the following day, he and his lawyer were presented with hundreds of deal files which were not produced as he last knew them to be kept in the ordinary course of business of LDLC. Neither is it reasonable to believe they were produced as they are presently kept in the ordinary course of business. Corporate Defendants produced the deal files neither in chronological order nor alphabetically by salesman name. Instead, the deal files were produced in what can best be

---

[8] This will not be the first time that Plaintiffs have been thwarted in working toward the settlement of their claims. Please recall that the individually named Defendants, in violation of this Court's *Order Setting Settlement Conference* (Doc. 40), failed to appear at the settlement conference mediated by Judge Wormuth on January 30, 2015.

PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC. NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM - 11

described as a "loose" alphabetical order by customer last name, although names were often misfiled and several bankers boxes of documents contained no labeling to indicate the alphabetical range contained within.

Moreover, RFP No. 15 contemplates the production of "dead deal files," *i.e.*, deals which LDLC pursued but which were never completed. *See* Doc. 52-3, p. 36 (demanding production of "all documents . . . which evidence all care deals made *or pursued* at Lithia Dodge of Las Cruces" (emphasis added)). No dead deal files were produced on May 10, 2015, and Defense counsel does not dispute that "dead" deal files are subject to this Court's order. Exh. 9, p. 5.

Additionally, an efficient deal file review was frustrated by Corporate Defendants' failure comply with the provision in the Court's Order directed at RFP No. 12, which requires Corporate Defendants to update the spreadsheet produced "to include the identity of the salesman who completed each sale . . . and . . . to provide a copy of the breakdown of costs for each deal file from this time period." Doc. 65, pp. 3-4. A copy of the spreadsheet produced is attached hereto as Exhibit 6.

In sum, Corporate Defendants' argument that "Plaintiffs have had, and still have, ample opportunity to review the deal files *as necessary* prior to the close of discovery" (Exh. 12 (emphasis added)) misses the point; full compliance with the Court's Order is a necessary prerequisite to the deal file review and such compliance has not yet occurred. *See supra* Part I, ¶ 15. Therefore, Plaintiffs have *never* "had . . . ample opportunity to review the deal files as necessary[.]" Exh. 12. Moreover, it is not fair to say that they "still have" an "ample opportunity" to review in light of the quickly approaching discovery deadline, the need to coordinate with defense counsel who has his office in Santa Fe, New Mexico, the need to convey

supplementation to Plaintiffs which so bulky that it had to be mailed, and the need to bring in Plaintiff Zimmerman from the Dallas, Texas, area where he presently resides and mitigates his damages.

### 2. Plaintiffs Are Unable to Fully Evaluate the Extent to Which Evidence of Fraud Contained Within "Deal Files" May Be Admissible at Trial, In Depositions, and as Exhibits to Motions.

The Court's Order requires that "[t]he parties work on drafting a stipulated confidentiality order that would cover any sensitive information" uncovered in the deal files produced in response to Request for Production ("RFP") No. 15. A stipulated confidentiality order will allow Plaintiffs to begin to assess the extent to which evidence of fraud may be admissible at trial and in motion practice.[9] Plaintiffs' ability to begin negotiating a stipulated confidentiality order with the Corporate Defendants is impossible so long as they do not have a complete deal file in their possession. Indeed, with regard to RFP No. 12, the Court ordered, in part, that the Corporate Defendants "produce one complete deal file for a deal completed by Plaintiff Parker and one complete deal file for a deal completed by Plaintiff Zimmerman." Doc. 65, pp. 3-4. With these complete deal files in hand, at least, Plaintiffs could begin negotiating a stipulated confidentiality order.

### 3. The Absence of Lender Guidelines, Minimally, Prevents Plaintiffs from Identifying When Defendants Have Motivation to Alter Applicant Credit Statements.

With regard to RFP No. 25, the Court ordered disclosure of all documents which evidence lender guidelines for Lithia Motors, Inc., but "only as to the Lithia Dodge of Las Cruces and its lenders," for the years 2011 – 2013, which includes, but is not necessarily limited

---

[9] The deadline for filing pretrial motions is also quickly approaching; it falls on June 19, 2015. Doc. 39, p. 3.

PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC. NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM - 13

to, approvals, proof of income waivers, interest rates, and credit score stipulation guidelines. Order, p. 5. As argued by Plaintiffs' counsel on the hearing on the First Motion to Compel, an understanding of the guidelines will allow Plaintiffs to understand when a customer would be unlikely to obtain financing for an automobile and thus under which circumstances Defendants will have motivation to falsify data on applicant credit statements.

As for RFP No. 26, the same holds true as it does for RFP No. 25—the disclosure of agreements between LDLC or Lithia Motors, Inc., with lenders, beginning with agreements in effect during June, 2012, as ordered by the Court (Doc. 65, p. 5) will aid Plaintiffs in determining, for instance, what lenders may require of LDLC in order to finance a purchase and under what circumstances (*e.g.*, when may proof of income be sought). Such information will allow Plaintiffs to understand when data provided to lenders may be falsified or otherwise misrepresented. Moreover, it could help Plaintiffs understand which class of actions by LDLC may constitute a material breach of lender agreements. Because financing of automobiles is crucial to the successful operation of an automobile dealership, Plaintiffs believe Defendants have strong incentive to cover-up any actions taken which may constitute material breaches of lender agreements.

### C. The Sanction of a Stay of Proceedings, Minimally, Is Appropriate to Ensure that Corporate Defendants Do Not Continue to Benefit from their Noncompliance with this Court's Order and to Prevent Further Injustice. However, if Combined With an Order Directing that Corporate Defendants Have Engaged In Fraud and Diverted Sales Leads Away from Plaintiff Parker Is Likely to Be More Effective and Is Not Inequitably Severe.

A stay of proceedings, followed by an adjustment of deadlines contained within this Court's *Order Setting Pretrial Deadlines and Briefing Schedule* (entered Aug. 22, 2014) (Doc. 39), is the least severe of the sanctions described in Rule 37 which might ensure that the

PLAINTIFFS' EMERGENCY MOTION TO COMPEL COMPLIANCE WITH DOC. NO. 65 AND FOR SANCTIONS AND SUPPORTING MEMORANDUM - 14

Corporate Defendants do not continue benefitting from their violation of the Court's Order. However, the more severe the sanction, the more likely it is the sanction will result in such assurance and to deter such conduct in the future, in this case or in other cases. *See Herlihy*, 186 F.R.D. at 647.

Therefore, the Court should also consider whether the sanction of "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[.]"FED. R. CIV. P. 37(b)(2)(A)(i). That is to say, the Court could additionally direct as follows:

> *Plaintiffs have proven: (1) that Plaintiffs reasonable believed, in good-faith, that the fraudulent alteration of applicant credit statements occurred at Lithia Dodge of Las Cruces and that such fraud did in fact occur as Plaintiffs believed; (2) that Defendants Armijo, Alderette, and Loza all directly participated in such fraudulent activity; and (3) that Corporate Defendants are responsible for not giving Plaintiff Parker a proportionate and fair number of sales leads during the time period encompassed by RFP No. 12, i.e., "November 26, 2012, up to the time of Plaintiff Zimmerman's termination of employment." Doc. 52-3, p. 33.*

Although this sanction is more "severe" than staying the proceedings, its severity is not so great because it does not inevitably lead to Plaintiffs prevailing on any of their claims. Moreover, this approach has the benefit of saving considerable party resources. If no more deal file review is to be conducted, all parties will save their own time and the time of their attorneys and the LDLC store will be unburdened by having counsel and Mr. Zimmerman occupying store space during business hours or otherwise. Similarly, there will be no need to arrive at a stipulated confidentiality order. *See supra* Part II(B)(2).

## IV. STATEMENT WITH REGARD TO D.N.M. LR-CIV. P. 7.1 & RULE 37

Pursuant to FED. R. CIV. P. 37(a)(1), a good faith effort has been made by Plaintiffs' counsel to resolve this dispute. *See supra* Part I. Defense counsel has not complied with Plaintiffs' reasonable request that Corporate Defendants comply with this Court's Order, necessitating this motion and a court order requiring Corporate Defendants to do so.

Pursuant to D.N.M. LR-CIV. P. 7.1, Plaintiffs sought the concurrence of counsel for Corporate Defendants' with the relief sought in this Motion. Defense counsel opposes the relief sought herein. *See* Exh. 12.

## V. PRAYER FOR RELIEF

For the reasons noted above, Plaintiffs move this Court for an order:

1. requiring Corporate Defendants to immediately, fully, and thoroughly comply with the Court's Order;

2. directing as follows: Plaintiffs have proven (1) that Plaintiffs reasonable believed, in good-faith, that the fraudulent alteration of applicant credit statements occurred at Lithia Dodge of Las Cruces and that such fraud did in fact occur as Plaintiffs believed; (2) that Defendants Armijo, Alderette, and Loza all directly participated in such fraudulent activity; and (3) that Corporate Defendants are responsible for not giving Plaintiff Parker a proportionate and fair number of sales leads during the time period encompassed by RFP No. 12, *i.e.*, "November 26, 2012, up to the time of Plaintiff Zimmerman's termination of employment."; or, alternatively,

3. staying proceedings until such time as Corporate Defendants have fully and thoroughly comply with the Court's Order; and

4. requiring Defendants or their counsel to pay Plaintiffs' costs and fees incurred in connection with this Motion; and

5. granting any other relief this Court deems just and proper.

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

Raúl A. Carrillo, Jr. / *raul@carrillolaw.org*
Yosef W. Abraham / *yosef@carrillolaw.org*
P.O. Box 457
Las Cruces, NM 88004
575-647-3200
575-647-1463 (fax)
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of May, 2015, I filed the foregoing document, electronically through the CM/ECF system.

Christopher J. Tebo
Hatcher & Tebo, P.A.
150 Washington Avenue, Suite 204
Santa Fe, NM 87501
Tel. (505) 983-6525
Email: ctebo@hatchertebo.com
*Attorney for Defendants*

                           _____
                           Raúl A. Carrillo, Jr.
                           Yosef W. Abraham